IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| SHANE LOUIS BURD, | CV 16-00088-H-DLC-JTJ |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| DOCTOR KOHUT, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 53.)  Although untimely, the Court will consider Plaintiff Shane Burd's Statement of Undisputed Facts (Doc. 67) filed in response to Defendant's motion. That document, however, is insufficient to establish a disputed issue of material fact.  Therefore, the Court finds that Dr. Kohut is entitled to summary judgment and recommends that this matter be dismissed.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir.

2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving

party may accomplish this by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only),

admission, interrogatory answers, or other materials" or by showing that such

materials "do not establish the absence or presence of a genuine dispute, or that

the adverse party cannot produce admissible evidence to support the fact."  Fed. R.

Civ. P. 56(c)(1)(A), (B).

 "Where the non-moving party bears the burden of proof at trial, the moving

party need only prove that there is an absence of evidence to support the

non-moving party's case."  *Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477

U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).  Summary judgment should be

entered, "after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial."

 *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  *Id.* at 323.  In such a circumstance, summary judgment should be

granted, "so long as whatever is before the district court demonstrates that the

standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. But "[a] plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

-3-

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).

## II. ALLEGATIONS

Mr. Burd alleges Defendant Kohut denied him medical care and "cut off" his pain medications in retaliation for him filing a report against him with the Medical Board. (Amended Complaint, Doc. 9-1.) The clearest statement of Mr. Burd's claims is contained in his motion for preliminary and permanent injunction. (Doc. 10.) Therein, Mr. Burd seeks an order requiring Defendant to put him back on Ultram for pain, to schedule surgery, to send him to an outside specialist, to put him on a medical diet for his ulcers, to help him with his low sodium, to put him on Humira for his ulcers, and to help him with his medical condition where his stomach acids eat his intestines. (Doc. 10 at 1.)

## III.  UNDISPUTED FACTS[1]

Mr. Burd is a 27-year-old male inmate incarcerated at Montana State Prison (MSP) in Deer Lodge, Montana.  (Defendant's Statement of Undisputed Facts, Doc. 54 (hereinafter "SUF") at ¶ 1.)  During his incarceration, Mr. Burd has made multiple complaints of chronic pain, particularly in his abdominal area, and also in his neck, back, and jaw.  He started complaining of abdominal pain in June 2014. (SUF at ¶ 3.)  Treatment decisions regarding Mr. Burd's medication, diagnostic testing, therapy, and treatment were based on Mr. Burd's history and physical examination along with accepted medical standards of care.  (SUF at ¶ 4.)  Dr. Kohut evaluated and treated Mr. Burd numerous times for his abdominal pain and other complaints and referred him to outside specialists for evaluation and treatment at Deer Lodge Medical Center (DLMC) and St. James Healthcare Center in Butte (St. James).  (SUF at ¶¶ 5, 6.)

From June 2014 until Mr. Burd filed his Complaint (Doc. 2) on September

---

[1]The only response to Defendant's Motion for Summary Judgment was Mr. Burd untimely Statement of Undisputed Facts.  (Doc. 67.)  That document did not comply with Local Rule 56.1(b) which requires parties opposing motions for summary judgment to file a statement of disputed facts which set forth verbatim the moving party's statement of undisputed facts and indicates whether each fact is disputed or undisputed.  If a fact is disputed, this rule requires the non-moving party to provide pinpoint citations to a specific pleading, deposition, answer to interrogatory, admission or affidavit to oppose each fact.  Mr. Burd disputes a couple of Dr. Kohut's statements of fact but fails to provide a pinpoint cite to specific evidence to refute these statements.  Nevertheless, the Court notes Mr. Burd's dispute where appropriate.  All other facts set forth in Defendant's Statement of Undisputed Facts (Doc. 54) are deemed undisputed.

15, 2016, Mr. Burd kited the MSP Infirmary at least 48 times with complaints of abdominal pain and other medical issues including back pain, toenail fungus, bruising, a sore throat, and coughing.  Medical staff responded to Mr. Burd's kites in a timely manner.  When appropriate, Mr. Burd was evaluated by nursing staff to determine the acuity of the problem, and the conditions and evaluations were shared with providers, such as Dr. Kohut, for further disposition.  Since June 2014, Mr. Burd has had at least 36 nursing and emergency evaluations by MSP medical staff for his complaints of pain and other issues.  (SUF at ¶ 7.)

Starting in June 2014, Mr. Burd was evaluated, diagnosed, and treated by providers at the MSP Infirmary at least 30 times, including at least 13 appointments with Dr. Kohut.  Mr. Burd has also been referred to specialists and providers at DLMC and St. James at least 10 times in that time period.  (SUF at ¶ 8.)

Chronic abdominal pain is addressed by evaluating the major organ systems within the lower chest, abdomen, and pelvis.  The evaluation begins with the patient's history and a physical.  This includes examination of these areas, including the genitals and rectal area, by inspection, auscultation, and palpation. Laboratory testing of blood, urine, and stool samples is done to check for infection.  X-rays, ultrasounds, and CT scans of the abdominal area are also used

to evaluate a patient with these complaints.  (SUF at ¶ 9.)  Mr. Burd has undergone all of the standard evaluations and tests to address his chronic abdominal pain, sometimes multiple times.  (SUF at ¶ 10.)

In addition, Mr. Burd has been prescribed numerous medications to address his complaints of pain including:  Amitriptyline and Non-Steroidal Anti-inflammatories (or NSAIDS, e.g., Ibuprofen); extra-strength Tylenol; Donnatal Elixir (both plain and mixed with Xylocaine Jelly/Mylanta (GI Cocktail)) to relieve the pain from colon and abdominal cramping; various laxatives and stool softeners to relieve the pain from constipation; muscle relaxants to relieve pain from muscle spasms; Pyridium to relieve pain from bladder and urinary spasms; antacids to relieve the pain from gastric irritation; multiple acid blockers to relieve the pain from gastric irritation; and limited prescriptions of Tramadol (Ultram) for acute pain.  (SUF at ¶ 11.)

Mr. Burd kited medical staff on June 21, 2014, with complaints of abdominal pain.  He was evaluated by nursing staff on June 22, 2014, and scheduled to see a provider.  (SUF at ¶ 12.)  On June 30, 2014, Mr. Burd was evaluated by Dr. Scott Piranian at the MSP Infirmary and prescribed Tylenol for pain and Colace and Sennakot for constipation.  (SUF at ¶ 13.)

Mr. Burd has been diagnosed with chronic constipation based on

evaluations and CT Scans of his abdominal area.  Constipation is a known cause

abdominal pain.  Mr. Burd has been prescribed numerous different laxatives and

stool softeners for this condition. (SUF at ¶ 14.)

On August 5, 2014, Mr. Burd had an abdominal ultrasound at DLMC,

which revealed possible gallbladder inflammation.  Further testing, another

ultrasound on August 11, 2014, and a nuclear hepatobiliary (HIDA Scan) on

August 13, 2014, at St. James by Dr. Frank Raiser, MD FACS, a surgeon with

Silver Bow Surgical Associates in Butte, did not show further pathology requiring

intervention.  (SUF at ¶ 15.)

On August 9, 2014, Mr. Burd had an emergency nursing evaluation and was

sent to DLMC for complaints of abdominal pain.  Mr. Burd was transferred to St.

James due to concerns of a possible appendicitis.  At St. James, Dr. Debra

Kontney, DO, determined that Mr. Burd did not have appendicitis based on his

blood tests, lack of a fever, and the type of abdominal pain that Mr. Burd

described.  On August, 13, 2014, Dr. Raiser discharged Mr. Burd back to MSP

"with consideration of an outpatient colonoscopy [C-scope]."  (SUF at ¶ 16.)

On August 18, 2014, Dr. Kohut reviewed Mr. Burd's chart.  Dr. Kohut

ordered blood tests and a three-month prescription of Prilosec for Mr. Burd based

on his review and Mr. Burd's continued complaints of abdominal pain.  (SUF at ¶

17.)  On September 25, 2014, Dr. Kohut ordered blood panels for Mr. Burd because previous blood work indicated possible anemia.  Because the body can frequently correct anemia on its own, it is standard practice to test a patient's blood again after a few weeks before prescribing treatment.  Dr. Kohut ordered a follow-up appointment with Mr. Burd.  (SUF at ¶ 18.)

On October 2, 2014, Mr. Burd saw Dr. Kohut at the MSP Infirmary for continued complaints of abdominal pain.  Mr. Burd reported that the laxatives did not help with his constipation and increased his abdominal pain.  Dr. Kohut ordered a CT of Mr. Burd's abdomen and prescribed Miralax for the continued constipation.  Dr. Kohut also noted that Mr. Burd "remains anemic."  Dr. Kohut ordered further blood work for Mr. Burd.  (SUF at ¶ 19.)

Mr. Burd's October 27, 2014 CT scan revealed no pathology requiring intervention.  (SUF at ¶ 20.)  In a kite dated November 1, 2014, Mr. Burd complained of pain on his lower left side.  Medical staff received the kite on November 6, 2014, assessed Mr. Burd the next day, and referred Mr. Burd to a provider.  (SUF at ¶ 21.)

On November 7, 2014, Mr. Burd was scheduled to follow-up with a provider at the MSP Infirmary regarding his October 27 CT Scan but he refused to attend the appointment.  (SUF at ¶ 22.)  On November 17, 2014, Mr. Burd saw Dr.

Kohut, who determined Mr. Burd should have an endoscopy to check for possible internal bleeding.  Mr. Burd's bloodwork continued to indicate anemia, and Dr. Kohut ordered iron supplements for Mr. Burd.  (SUF at ¶ 23.)

On November 20, 2014, Mr. Burd saw Dr. Kohut for complaints of abdominal pain.  Dr. Kohut ordered another HIDA scan to check Mr. Burd's gallbladder.  (SUF at ¶ 24.)  On December 1, 2014, medical staff received another kite from Mr. Burd where he complained of pain on his right side.  Mr. Burd was evaluated by nursing staff the next day and referred to a provider.  (SUF at ¶ 25.)  Mr. Burd saw PA Lance Griffin on December 3, 2014, and again on December 10, 2014, for complaints of abdominal pain.  Griffin ordered blood work and hemoccult tests of Mr. Burd's stools.  Griffin noted that Dr. Kohut had ordered another HIDA scan.  (SUF at ¶ 26.)

On February 6, 2015, Mr. Burd had an emergency nurse evaluation for complaints of abdominal pain.  Nursing staff consulted Dr. Piranian, reviewed Mr. Burd's records, and gave Mr. Burd a laxative and a 60 mg dose of Toradol.  (SUF at ¶ 27.)

On April 3, 2015, Mr. BURD had another HIDA scan at St. James and the results were normal.  (SUF at ¶ 28.)  On April 20, 2015, Mr. Burd followed up after the HIDA scan with Dr. Kohut, and Mr. Burd reported feeling thirsty all the

-10-

time, nauseated, hot, and lightheaded.  (SUF at ¶ 29.)  On April 20, 2015, Mr.

Burd was transferred to DLMC due to Dr. Kohut's concern of possible

appendicitis and possible diabetes.  Mr. Burd was evaluated by Dr. Jason McIsaac,

MD and tested negative for diabetes.  Dr. McIsaac ordered another a CT scan and

lab work, all of which were normal.  Mr. Burd was discharged back to MSP.  (SUF

at ¶ 30.)

On July 16, 2015, Mr. Burd saw PA Kim Fisk at the MSP Infirmary for a

routine medical evaluation.  Mr. Burd complained of continued gastrointestinal

distress.  Dr. Piranian submitted a pre-authorization for Mr. Burd to have a

surgical consult with Dr. Raiser.  (SUF at ¶ 31.)  On July 22, 2015, Mr. Burd was

scheduled for a follow-up appointment at the MSP Infirmary regarding his

gallbaldder, but he did not show up.  (SUF at ¶ 32.)

On August 6, 2015, Mr. Burd had an emergency nursing evaluation for

back pain after he reported "dead lifting 700 pounds."  Mr. Burd was referred to

Dr. Piranian, who discussed back exercises with Mr. Burd and told him to keep

moving.  Dr. Piranian also prescribed five-day prescriptions of Prednisone,

Robaxin, and Tramadol (Ultram) for Mr. Burd.  Mr. Burd was evaluated again by

nursing staff on August 16, 2015, instructed on exercises and proper lifting

techniques, given Tylenol and ibuprofen for pain, and referred to a provider.  (SUF

at ¶ 33.)

On August 20, 2015, Mr. Burd saw Jodi Cozby, FNPC, for complaints of pain in his back and leg after "dead lifting 270#." Cozby prescribed a 15-day course of Robaxin to address Mr. Burd's pain. However, the Robaxin was apparently not immediately ordered for Mr. Burd. (SUF at ¶ 34.) On August 26, 2015, Mr. Burd kited to inquire about his prescription for Robaxin. Staff replied that no additional orders for prescriptions were on file. (SUF at ¶ 35.) On August 28, 2015, Mr. Burd kited Cozby, stating that "my musole [sic] relaxors [sic] are not working, & I'm still in pain, because the nurses refuse to give me the medication that you prescribed me." Staff replied that his prescriptions for Tramadol (Ultram), Robaxin, and Prednisone had ended on August 10, 2015. The August 28 kite was forwarded to Cozby, who ordered the Robaxin she had prescribed for Mr. Burd on August 20, 2014. (SUF at ¶ 36.)

Mr. Burd kited twice on August 30, 2015, complaining that his mediation was not working, and staff replied that he was scheduled to see a provider. (SUF at ¶ 37.) On September 2, 2015, Mr. Burd was scheduled to see Dr. Kohut after he kited complaining about pain from constipation. Mr. Burd refused to attend the appointment. (SUF at ¶ 38.)

On September 3, 2015, Mr. Burd kited that his constipation was getting

worse, and his medication was not working.  Mr. Burd had an emergency evaluation by nursing staff and was transported to the DLMC Emergency Room for complaints of abdominal pain and constipation.  Mr. Burd was evaluated by Paula Christensen, FNP, at DLMC.  A CT scan of Mr. Burd's abdomen was unremarkable, and Mr. Burd was given laxatives and discharged back to MSP. (SUF at ¶ 39.)

On September 9, 2015, Mr. Burd followed up at the MSP infirmary with PA Fisk, who ordered further follow-up appointments to monitor Mr. Burd's symptoms, including back pain and abdominal pain.  PA Fisk resubmitted a request for Mr. Burd to have a surgical consult and ordered Naproxen to address Mr. Burd's pain.  (SUF at ¶ 40.)  On September 9, 2015, PA Fisk also diagnosed Mr. Burd with mild thoracic scoliosis, a condition which could contribute to Mr. Burd's complaints of back pain.  Mild thoracic scoliosis is a relatively common condition, and corrective measures are rarely taken in adult patients.  In addition, Mr. Burd and PA Fisk discussed stretching and monitoring Mr. Burd's activity levels.  (SUF at ¶ 41.)

On September 19, 2015, Mr. Burd had an emergency evaluation by nursing staff for complaints of abdominal pain.  Nurses notified Dr. Piranian and gave Mr. Burd hemoccult tests (which test for blood in the stool).  (SUF at ¶ 42.)

-13-

On September 24, 2015, Mr. Burd followed-up with PA Fisk due to his continued complaints of abdominal pain and stomach upset.  PA Fisk decided to discontinue the naproxen and other NSAID pain relievers for Mr. Burd because such medications are known to cause stomach upset.  (SUF at ¶ 43.)

On October 1, 2015, Mr. Burd saw PA Fisk for continued complaints of abdominal pain.  Mr. Burd was refusing to take his Prilosec for fear it would interact with his iron supplement.  PA Fisk prescribed Zantac (Ranitidine) for Mr. Burd, a different acid blocker, and referred Mr. Burd to Dr. Piranian.  (SUF at ¶ 44.)  On October 4, 2015, Mr. Burd had an evaluation by nursing staff for complaints of abdominal pain.  Mr. Burd was referred to a provider for an appointment.  (SUF at ¶ 45.)

On October 5, 2015, Dr. Piranian reviewed Mr. Burd's chart.  He noted that Mr. Burd has complained of chronic abdominal pain, chronic constipation, and his blood tests revealed mild anemia.  Mr. Burd also has mild thoracic scoliosis, which contributes to complaints of back pain.  Dr. Piranian determined that Mr. Burd may need an EGD or C-scope.  Dr. Piranian prescribed Tramadol (Ultram) for Mr. Burd's pain pending his surgical consult.  (SUF at ¶ 46.)

On October 7, 2015, Mr. Burd had his surgical consult with Dr. Raiser, who recommended Mr. Burd have an EGD.  Mr. Burd followed-up with Dr.

-14-

Kohut, and Mr. Burd and Dr. Kohut agreed that Mr. Burd should have both an

EGD and a C-scope.  (SUF at ¶ 47.)

On October 18, 2015, Mr. Burd kited medical staff with complaints of

stomach pain and black stools.  He was evaluated by nursing staff the next day,

given hemoccult cards to test his stool, and referred to a provider. (SUF at ¶ 48.)

Mr. Burd kited medical staff with complaints of stomach and abdominal pain on

October 19, 2015; October 21, 2015; and October 22, 2015 and had an emergency

evaluation on October 22, 2015.  Dr. Kohut was notified, and ordered one dose of

100 mg of Tramadol (Ultram) to address Mr. Burd's pain.  (SUF at ¶ 49.)

On October 30, 2015, Mr. Burd had an emergency evaluation by nursing

staff for complaints of abdominal distress and constipation.  Mr. Burd was taken to

DLMC for complaints of abdominal pain where he was evaluated by Dr. Chad

Colvin, DO.  Mr. Burd had a CT of his abdomen, which revealed a moderate

amount of gas and stool in the colon.  Mr. Burd was diagnosed with constipation,

hyponatremia (low-sodium), and probable psychogenic polydipsia (drinking

excess fluid).  Dr. Colvin treated Mr. Burd with sodium replacement and Miralax,

and discharged him the next day with recommendations of temporary fluid

restrictions. (SUF at ¶ 50.)

On November 5, 2015, Mr. Burd had a follow-up appointment with

Dr. Kohut regarding his emergency visit to DLMC.  However, Mr. Burd was

dismissed from the appointment by Dr. Kohut for being hostile and obnoxious.

(SUF at ¶ 51.)  Again, Mr. Burd contends there is no proof to support the

allegation that he was hostile with Dr. Kohut.  (Doc. 67 at ¶¶ 3, 4.)

On December 2, 2015, Dr. Raiser at DLMC conducted a C-scope and EGD

on Mr. Burd.  The C-scope was normal.  Based on the EGD, Dr. Raiser diagnosed

Mr. Burd with esophagitis, caused by chronic gastroesophageal reflux disease or

GERD, a gastric ulcer, and a sliding hiatal hernia.  (SUF at ¶ 52.)  Dr. Raiser

recommended that Mr. Burd take 40 mg of Prilosec for the conditions, a substitute

for which (Omeprazole) was ordered by PA Lance Griffin on December 2, 2015.

(SUF at ¶ 53.)  A sliding hiatal hernia is a relatively common condition among

adults, and the main symptom is GERD.  The standard treatment is to address the

GERD symptoms.  Mr. Burd was prescribed Prilosec and other antacids and acid

blockers to address his GERD.  (SUF at ¶ 54.)  Mr. Burd's numerous abdominal

examinations, ultrasounds, and CT Scans never indicated he has an inguinal

hernia.  It is extremely rare for a hernia to be large enough to push on a patient's

testicle and cause pain, and such a large hernia would likely be detected on an

ultrasound or CT Scan.  (SUF at ¶ 55.)

Because Mr. Burd has been diagnosed with a gastric ulcer, he is rarely

-16-

prescribed NSAIDS for pain relief.  NSAIDs are relatively contraindicated in

patients with gastric ulcers, because misuse of the medication can be related to

ulcer development, GERD, and gastroenteritis.  As described above, Mr. Burd has

been prescribed numerous other medications for pain relief.  (SUF at ¶ 56.)

Mr. Burd kited Dr. Piranian twice on December 3, 2015, for complaints of

pain, and requested refills of his medications, specifically Tramadol (Ultram).  He

kited medical again complaining of pain on December 4, 2015, December 7, 2015,

and December 9, 2015.  Medical staff scheduled Mr. Burd to see Dr. Kohut on

December 10, 2015. (SUF at ¶ 57.)

On December 10, 2015, Mr. Burd followed-up with Dr. Kohut to discuss the

diagnosis of a gastric ulcer.  Dr. Kohut ordered a bed wedge to help Mr. Burd's

reflux.  Dr. Kohut prescribed the medication Carafate to treat the gastric ulcers and

the medication Tramadol (Ultram) to address Mr. Burd's pain.  Dr. Kohut noted

that the Tramadol (Ultram) was prescribed for six weeks until the Prilosec and

Carafate could take effect, and it typically takes between four and six weeks for an

ulcer to heal.  (SUF at ¶ 58.)

Mr. Burd has been provided medications customary for the treatment

of ulcer disease.  Carafate coats any area of the stomach, which has been eroded

by stomach acid, with a protective layer.  This allows healing.  Prilosec reduces

the amount of acid which the stomach produces thus decreasing the erosion of the stomach lining.  (SUF at ¶ 59.)

Mr. Burd kited medical staff on January 24, 2016, and he stated that "the only pain medication that I have to manage my pain expired."  Staff responded that Mr. Burd should take his other medications as prescribed.  (SUF at ¶ 60.)

Mr. Burd repeatedly requests Tramadol (Ultram) to treat his pain, claiming it is the only medication that gives him relief from pain.  Tramadol is an FDA Controlled Class IV, narcotic-like medication with a high potential for misuse, abuse, and addiction.  Because Tramadol has a high potential for misuse and abuse, it is typically used by providers at MSP for treatment of acute pain for approximately seven to ten days.  This practice has been explained to Mr. Burd by Dr. Kohut on numerous occasions, including whenever Dr. Kohut prescribed Mr. Burd Tramadol.  (SUF at ¶ 61.)

Because many patients at the MSP Infirmary have histories of substance addiction and abuse, providers carefully monitor prescriptions of controlled substances such as Tramadol (Ultram).  Mr. Burd self reported abusing alcohol prior to his incarceration.  Medications such as Tramadol have a similar effect on the brain to alcohol, which makes the risk of addiction to Tramadol even higher for a patient like Mr. Burd.  (SUF at ¶ 62.)

Mr. Burd contends in his response to Defendant's motion that Dr. Kohut cut him off his pain medications out of retaliation for filing a report with the medical board. (Doc. 67.)  Dr. Kohut contends he never received notice of any complaint or report filed by Mr. Burd against him with the "Medical Board," the Montana Board of Medical Examiners, or any other board.  (SUF at ¶ 106.)  Further, Dr. Kohut contends he did not "cut off" Mr. Burd's pain medication.  Rather Dr. Kohut explains that he prescribed Mr. Burd Tramadol (Ultram) for limited periods of time for acute pain according to MSP's standard practice.  Mr. Burd has been prescribed numerous medications to treat his complaints of pain.  (SUF at ¶ 63.)

While narcotic and narcotic-like medications are effective in treating painful conditions, they do not treat the underlying cause of pain such as Mr. Burd's GERD or his gastric ulcer.  Tramadol (Ultram) relieved Mr. Burd's abdominal pain associated with the gastric ulcer; however, the Prilosec, Carafate, and similar medications heal the ulcer and provide continued relief of pain by eliminating the underlying cause.  Maintenance on Prilosec or similar medications prevents reoccurrence of the irritation and ulceration, thereby eliminating severe, debilitating pain.  A gastric ulcer and GERD may cause occasional discomfort, but the discomfort in most cases does not require continual narcotic analgesia from a medication such as Tramadol.  (SUF at ¶ 64.)

-19-

Mr. Burd refused to take certain medications, such as Carafate, because he claimed they increased his pain.  Mr. Burd's complaint does not medically make sense because Carafate decreases pain from ulcers and promotes healing.  Mr. Burd was reminded on several occasions by different providers to take all of his medications as prescribed, including his Prilosec and Carafate, to improve his conditions and ultimately aid in pain relief.  (SUF at ¶ 65.)

Defendant Kohut and other providers, such as PA Griffin, have experienced hostile and aggressive behaviors from Mr. Burd during visits when he does not receive narcotic or narcotic-like medications such as Tramadol (Ultram).  These behaviors are commonly seen in drug-dependent and addicted patients.  (SUF at ¶ 66.)  Again, Mr. Burd disputes that he was hostile with Kohut or Griffin.  (Doc. 67 at ¶ 4.)

Mr. Burd kited medical staff on January 25, 2016, and again on January 28, 2016, for complaints of pain, and again requested Tramadol (Ultram).  Staff replied that Mr. Burd's case had been reviewed by Dr. Kohut, he needed to continue his current treatment, and he could discuss his concerns at his next visit.  (SUF at ¶ 67.)  On January 27, 2016, Dr. Kohut reviewed Mr. Burd's chart and determined that Mr. Burd needed to be scheduled within the next three weeks for further evaluation.  Dr. Kohut determined Mr. Burd should continue his current

treatment until he was seen, and he would not get a renewal of his prescription for Tramadol (Ultram) at that time.  (SUF at ¶ 68.)

Mr. Burd kited medical staff with complaints of abdominal pain and vomiting twice on February 5, 2016 and once on February 6, 2016.  Mr. Burd was evaluated by nursing staff on February 7, 2016, when he stated that Tylenol and ibuprofen upset his stomach.  Mr. Burd was referred to a provider.  (SUF at ¶ 69.)

On February 18, 2016, Mr. Burd saw Dr. Kohut for complaints of abdominal pain and constipation.  Dr. Kohut did not recommend any changes to Mr. Burd's care and noted that Mr. Burd was still on Carafate and Prilosec for his GI distress.  Dr. Kohut also noted that Mr. Burd claims that extra-strength Tylenol makes him sick.  (SUF at ¶ 70.)

On March 13, 2016, Mr. Burd kited medical staff with complaints of burning in his throat, abdominal pain, and he claimed his medications were making him sick.  Mr. Burd was evaluated by nursing staff the next day, and given suggestions for addressing his acid reflux including taking Pepto Bismol, avoiding late meals, and gargling with salt water.  (SUF at ¶ 71.)

On March 16, 2016, Mr. Burd kited with complaints of abdominal pain, black stools, and pain swallowing.  Mr. Burd had an emergency evaluation by nursing staff after he complained of vomiting and pain in his upper quad and

lower back.  Nursing staff contacted Dr. Piranian, who ordered 60 mg of Toradol

for Mr. Burd.  (SUF at ¶ 72.)

On March 17, 2016, Mr. Burd kited with complaints of abdominal pain

and black stools.  Mr. Burd had an emergency evaluation by nursing staff, and Dr.

Kohut took over the assessment due to Mr. Burd's complaints of abdominal pain,

black stools, and vomiting.  Mr. Burd was taken to DLMC and evaluated by Dr.

Colvin.  Mr. Burd was diagnosed with moderate hyponatremia (low sodium), and

an x-ray of Mr. Burd's abdomen revealed modest constipation.  Mr. Burd received

sodium replacement and was returned to MSP for follow-up care.  (SUF at ¶ 73.)

On March 18, 2016, and March 19, 2016, Mr. Burd kited medical staff

again complaining of abdominal pain and black stools.  On March 19, 2016, Mr.

Burd was evaluated by nursing staff who referred him to a provider.  Mr. Burd had

a follow-up appointment with Rosanna Hengst, LPN, scheduled for March 28,

2016, which had to be rescheduled.  The records do not indicate why the

appointment had to be rescheduled.  (SUF at ¶ 74.)

On April 4, 2016, Mr. Burd followed-up at the MSP Infirmary with

Hengst, and Mr. Burd stated his belief that his "meds" were hurting his abdomen.

Hengst encouraged Mr. Burd to take his medications as proscribed to treat his

various conditions.  (SUF at ¶ 75.)

On April 20, 2016, Mr. Burd was seen by PA Griffin at the MSP
Infirmary for complaints of abdominal pain.  Griffin ordered testing of Mr. Burd's
stool, and noted that Mr. Burd became angry when he would not prescribe
narcotics to Mr. Burd.  Mr. Burd later kited to apologize to Griffin.  (SUF at ¶ 76.)

On May 5, 2016, Mr. Burd kited medical that "I think I damaged my
hand."  On May 7, 2016, Mr. Burd was assessed by nursing staff, given Tylenol
and ibuprofen, and told to re-kite if symptoms worsened or did not improve within
48 hours.  Mr. Burd kited again on May 8, 2016, stating that his hand still hurt.
Mr. Burd had an emergency evaluation on May 9, 2016 and admitted to punching
a wall two times.  On May 10, 2016, Mr. Burd saw Griffin at the MSP Infirmary
for his hand.  Mr. Burd was sent to DLMC and evaluated by Dr. Colvin. X-rays
revealed no fractures or other significant injuries, and he was returned to MSP for
pain management. (SUF at ¶ 77.)

On May 21, 2016, Mr. Burd kited medical staff with complaints of
back pain, abdominal pain, and indigestion.  Mr. Burd had an emergency nursing
evaluation that day, and was given Tylenol and ibuprofen for pain. (SUF at ¶ 78.)

On May 26, 2016, Mr. Burd had another emergency evaluation by
nursing staff.  Staff discussed the evaluation with Dr. Kohut, and Mr. Burd was
given antacids. (SUF at ¶ 79.)   On May 27, 2016, Mr. Burd kited again with

complaints of abdominal pain.  On May 28, 2016, Mr. Burd was evaluated by nursing staff, who, under the direction of Dr. Kohut, gave Mr. Burd milk of magnesia and a renewed prescription for Carafate.  (SUF at ¶ 80.)

On May 29, 2016, Mr. Burd had an emergency evaluation for severe abdominal pain.  He was taken to DLMC for complaints of severe abdominal pain and was evaluated by Erik Kinzer, FNP.  An x-ray and CT Scan of Mr. Burd's abdomen and chest revealed signs of chronic constipation.  Mr. Burd's labs again revealed hyponatremia (low sodium), which was likely from polydipsia (drinking excess fluid).  Kinzer discharged Mr. Burd to return to MSP with instructions for a fluid restriction and to recheck Mr. Burd's metabolic panel. (SUF at ¶ 81.)

On June 1, 2016, Mr. Burd kited with complaints of abdominal pain and an inability to urinate.  On June 3, 2016, Mr. Burd was evaluated by nursing staff. After urine was noted in the toilet, Mr. Burd told nursing staff his inability to urinate was "not a problem now." (SUF at ¶ 82.)

On June 6, 2016, Mr. Burd was seen by Dr. Kohut for abdominal pain and continued nausea.  Mr. Burd stated that "he doesn't want the medication because his body can't handle it."  Dr. Kohut encouraged Mr. Burd to take his medications as prescribed, including Carafate and Prilosec.  Carafate and Prilosec are appropriate maintenance medications for Mr. Burd because of his continued

complaints of abdominal pain. (SUF at ¶ 83.)

On June 9, 2016, Mr. Burd was evaluated by nursing staff due to concerns of a possible hunger strike and was referred to a provider. (SUF at ¶ 84.) On June 10, 2016, Mr. Burd saw Dr. Kohut. Mr. Burd reported that he was not on a hunger strike, but he could not eat due to severe abdominal pain. Mr. Burd was taken to DLMC and evaluated by Dean A. Chapel, PA-C. A CT Scan of Mr. Burd's pelvis abdomen and his blood tests were normal, and no cause was found for Mr. Burd's complaint of abdominal pain. Mr. Burd was discharged to MSP for pain control. (SUF at ¶ 85.)

On June 12, 2016, Mr. Burd had an emergency evaluation by nursing staff due to complaints of an inability to urinate and abdominal pain. Dr. Kohut was notified, and urinalysis was completed. (SUF at ¶ 86.) On June 13, 2016, he was again taken to DLMC for complaints of burning with urination and being unable to urinate. Mr. Burd was evaluated by Kinzer, diagnosed with acute prostatitis and acute urinary retention. Kinzer prescribed Mr. Burd the antibiotic Cipro and the pain reliever Norco. A catheter was placed, and Mr. Burd was discharged to MSP for follow-up care. (SUF at ¶ 87.)

On June 14, 2016, Mr. Burd kited with complaints of pain in his thighs and right testicle and being unable to urinate despite having a catheter. He was

evaluated by nursing staff the next day.  Nursing staff contacted Dr. Kohut, who

ordered a five-day prescription of Tramadol (Ultram) for Mr. Burd.  (SUF at ¶ 88.)

On June 20, 2016, Mr. Burd's catheter was removed at the MSP Infirmary.

Dr. Kohut noted that Mr. Burd was continuing to feel discomfort, and Mr. Burd

should follow-up with a provider in one week.  (SUF at ¶ 89.)  On June 21, 2016,

Mr. Burd kited with complaints of pain, and staff replied that he was scheduled for

a follow-up appointment.  (SUF at ¶ 90.)  On June 27, 2016, Mr. Burd followed-up

in the MSP Infirmary with Dr. Kohut and complained of constant pain.  Dr. Kohut

prescribed the antibiotic Bactrim DS and the pain-reliever Pyridium to further treat

Mr. Burd's prostatitis. (SUF at ¶ 91.)  After Mr. Burd's appointment on June 27,

2016, he kited again complaining of pain and asking for a second opinion.  Staff

replied that Mr. Burd was just seen, and he should take his medications as

prescribed to give them time to work.  (SUF at ¶ 92.)

On July 28, 2016, Mr. Burd kited medical staff stating that his bed

wedge went missing when he was placed in an isolation cell.  Staff replied that he

needed to work with his unit to address property issues. (SUF at ¶ 93.)

On August 8, 2016, Mr. Burd kited medical complaining of pain and

other issues.  Mr. Burd was scheduled to see a provider.  (SUF at ¶ 94.)  On

August 13, 2016, he had an emergency evaluation by nursing staff for complaints

of abdominal pain and constipation.  The on-call provider was notified, and Mr.

Burd was told to increase his dose of Miralax. (SUF at ¶ 95.)

On August 15, 2016, Mr. Burd saw Dr. Kohut for complaints of abdominal

pain.  Dr. Kohut examined Mr. Burd and ordered further blood tests.  (SUF at ¶

96.)  On August 16, 2016, Mr. Burd kited medical staff complaining of his low

sodium issues and requesting a snack.  Staff replied that Mr. Burd could request a

dietary consult, but medical staff could not issue a Health Service Request for a

snack.  (SUF at ¶ 97.)

On September 12, 2016, Mr. Burd saw Dr. Kohut for complaints of

abdominal pain.  He claimed that an outside provider told him he has a hernia.  As

described above, Mr. Burd has been diagnosed with a sliding hiatal hernia, but he

has never shown signs or symptoms of an inguinal hernia.  (SUF at ¶ 98.)   Mr.

Burd's previous lab work indicated hyponatremia (low sodium), likely due to

probable psychogenic polydipsia (excess fluid consumption).  Mr. Burd has been

treated with sodium replacement and temporary fluid restrictions.  As of June

2017, Mr. Burd's sodium levels were normal. (SUF at ¶ 99.)

As of September 2016, Mr. Burd continued to be prescribed iron

supplements.  Although the anemia is currently under control, Mr. Burd's

continued complaints have required surgery and other treatment.  Because surgery

strains a patient's system, continued dietary supplementation is appropriate.  (SUF at ¶ 100.)

Mr. Burd applied for medical parole on June 6, 2016, due to his chronic pain and other conditions.  He claimed "[D]octor Kohut refuses to help me & my medical conditions are only getting worse."  (SUF at ¶ 102.)  On November 16, 2016, Dr. Elizabeth Rantz, MD, reviewed Mr. Burd's application for medical parole.  Dr. Rantz is an independent physician who was hired by the Department of Corrections to review the application.  She reviewed Mr. Burd's charts and talked with MSP infirmary staff.  (SUF at ¶ 103.)

Dr. Rantz did not approve Mr. Burd's application.  She noted that Mr. Burd has complained of abdominal pain for a number of years and had many evaluations, and there was "no problem caring for [Mr. Burd] at prison . . . at most [Mr. Burd] may need [a] urology consult."  She also noted that "inmate has had extensive and multiple evaluations with no significant findings." (SUF at ¶ 104.)

Because Dr. Rantz did not approve Mr. Burd's application for medical parole, Mr. Burd's application was denied and did not proceed to a hearing panel.  Mont. Admin. R. 20.25.307(3) (8/10/12) ("The diagnosis must be reviewed and accepted by the department's medical director or designee before a hearing panel may hear the case for medical parole.").  (SUF at ¶ 105.)

-28-

## IV.  DISCUSSION

In order to prove a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Thus, in order to prevail, Mr. Burd must show both that his medical needs were objectively serious, and that Defendants possessed a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 299 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Indications that a prisoner has a serious need for medical treatment are the following:  the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.  *Wood v. Housewright*, 900 F.2d 1332, 133741 (9th Cir. 1990) (citing cases); *Hunt v. Dental Dept.*, 865 F.2d 198, 200–01 (9th Cir. 1989); *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled*

*on other grounds, WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference."  Negligence is insufficient.  *Farmer*, 511 U.S. at 835.  Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety."  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted).  Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).

A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.  *Id.*

The Court will assume for purposes of these Findings, that Mr. Burd has serious medical needs.  The record, however, does not support his claim that Dr. Kohut was deliberately indifferent to those needs.  Because of Mr. Burd's

multitude of medical issues, he presents what appears to be a difficult medical case to monitor and treat.  The records presented by Defendant confirm that the medical staff at MSP attempted to treat and monitor Mr. Burd's medical conditions. Although it may not be the care Mr. Burd desires, there is no evidence that Dr. Kohut was deliberately indifferent to Mr. Burd's serious medical needs.

Mr. Burd presented no evidence (other than his opinion) that the treatment provided by Dr. Kohut and other medical providers at MSP was medically insufficient.  Rather he has only suggested a difference of opinion about the best way to treat his pain and other medical conditions which is insufficient to state a claim for deliberate indifference.  *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a Section 1983 claim."); *see also Shiira v. Hawaii*, 706 Fed. Appx. 436 (2017)(affirming summary judgment for defendants who deprived plaintiff of methadone and Percodan but offered over-the-counter pain medication and treatment for potential detoxification symptoms; plaintiff's expert did not testify that offering alternative pain medications would be medically inappropriate); *Fausett v. LeBlanc*, 553 Fed.Appx. 665 (9th Cir. 2014) (affirming summary judgment for defendants where doctors did not provide Valium ordered in

-31-

hospital-discharge instructions after spinal-fusion surgery and instead provided substitute medicine and other pain medications); *Gauthier v. Stiles*, 402 Fed.Appx. 203 (9th Cir. 2010) (affirming dismissal; plaintiff's disagreement with the dosage and type of pain medication administered after surgery not deliberate indifference).

## V.  CONCLUSION

Even if the Court assumes that Mr. Burd has serious medical conditions, there is a lack of a genuine issue of material fact regarding whether Dr. Kohut was deliberately indifferent to those issues.  Mr. Burd failed to provide any specific, supported or material evidence to dispute the undisputed facts presented by Defendant.  Mr. Burd has not presented any evidence of deliberate indifference sufficient to support a claim under the Eighth Amendment.

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.  Defendant's Motion for Summary Judgment (Doc. 53) should be GRANTED.

2.  The Clerk of Court should be directed to close the case and enter judgment in favor of Defendant pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.   The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  No reasonable person could suppose an appeal would have merit.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 27th day of February, 2018.


   */s/ John Johnston*
John Johnston
United States Magistrate Judge

---

[2]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) ... 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Burd is being served by mail, he is entitled an additional three days after the period would otherwise expire.